UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM SMITH,

                Plaintiff,

       - against -

POLICE OFFICER DEREK WEBBER,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-1164 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

Plaintiff William Smith, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendant New York City Police Department ("NYPD") Officer Derek Webber for false arrest and malicious prosecution. Before the Court is Defendant's motion for summary judgment. For the reasons stated below, Defendant's motion is granted in its entirety.

## BACKGROUND

**I.    Plaintiff's Failure to Provide a Compliant 56.1 Statement**

The Eastern District of New York's Local Rule 56.1(b) requires that

> [t]he papers opposing a motion for summary judgment . . . include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

E.D.N.Y. Local Rule 56.1(b). "*Pro se* litigants who receive proper notice pursuant to Local Civil Rule 56.2 are not excused from satisfying their obligations under Local Civil Rule 56.1." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016) (internal citation omitted), *aff'd sub nom. Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018).

Here, though Defendant provided the required notice (*see* Notice, Dkt. 46), Plaintiff did not provide the required 56.1 Statement. Defendant therefore asks that the Court deem the facts

1

contained in Defendant's 56.1 Statement admitted. (Defendant's Reply, Dkt. 47, at 1.) The Court declines to do so.

As the Second Circuit has advised:

> A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules. Thus, we have previously indicated, and now hold, that while a court is not required to consider what the parties fail to point out in their Local 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted); *cf. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Although Plaintiff has failed to comply with Local Rule 56.1(b), he did provide his own factual account of the case and attached relevant non-duplicative exhibits. (*See generally* Plaintiff's Brief ("Pl.'s Br."), Dkt. 40); *Thigpen v. Bd. of Trs. of Local 807 Labor-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019 WL 4756029, at *1 (E.D.N.Y. Sept. 29, 2019) (declining to deem defendants' 56.1 statement admitted when plaintiff "provide[d] her own factual account of the case and attached numerous, non-duplicative exhibits"). Given Plaintiff's *pro se* status, the Court will "examine the record to determine whether there are any triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil Rule 56.1." *Cain*, 182 F. Supp. 3d at 63; *see also Holtz*, 258 F.3d at 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (internal citations omitted).

## II. Relevant Facts[1]

On April 11, 2016, R.B.,[2] a taxi driver, was robbed by an African-American male at the end of a trip from Brooklyn to Queens. (Defendant's 56.1 Statement ("Def.'s 56.1"), Dkt. 43, ¶ 1.) During the robbery, the male placed a hard object to the back of R.B.'s head and stated "give me all your money." (*Id.*; *see also* Defendant's Exhibit ("Def.'s Ex.") C, Dkt. 45-3.) After taking $225 from R.B., the perpetrator fled the scene. (Def.'s 56.1, Dkt. 43, ¶ 1; Def.'s Ex. C, Dkt. 45-3.)

R.B. reported the robbery to the police on April 12. (Def.'s 56.1, Dkt. 43, ¶ 2; Def.'s Ex. E, Dkt. 45-5.) The same day, Defendant Webber retrieved photos of the perpetrator from video surveillance inside of R.B.'s taxi cab. (Def.'s 56.1, Dkt. 43, ¶ 3.) On April 13, Defendant Webber conducted a "Mugshot photo viewing of individuals matching the description of the perpetrator." (Plaintiff's Exhibit ("Pl.'s Ex.") D, Dkt. 40, at ECF[3] 18.) R.B. was unable to identify anyone. (*Id.*) On April 15, Defendant issued a request for a Crime Stoppers Reward[4] based on the surveillance photo retrieved from R.B.'s taxi cab. (Def.'s 56.1, Dkt. 43, ¶ 4.) Based on Defendant Webber's investigation, Plaintiff was identified as a suspect in the robbery. (*Id.* ¶ 5.)

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 Statement denotes that this Court has determined that the underlying factual allegation is undisputed. Any citation to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[2] R.B.'s full name is redacted in the evidence provided by the parties.

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Neither party specifies what happens when a Crime Stoppers Reward is requested, but the Court infers that the general purpose is to enlist the public's help in identifying an unknown perpetrator. (*See* Def.'s Ex. F, Dkt. 45-6 (requesting 20 posters of perpetrator's photo); Pl.'s Ex. E, Dkt. 40, at ECF 22 (requesting that the Crime Stoppers flyer be distributed to the news media and "INRU").)

3

On April 16, R.B. identified Plaintiff as the person who robbed him from a photo array. (*Id.* ¶¶ 8–9.) The photo of Plaintiff used in the photo array was from the "NYPD Adult Suspect Database." (Def.'s Ex. G, Dkt. 45-7, at ECF 7.) On April 18, Plaintiff was arrested on a homicide charge unrelated to the robbery of R.B. (Def.'s 56.1, Dkt. 43, ¶ 10.) On the same day as Plaintiff's arrest in the homicide case, Defendant Webber placed Plaintiff in a lineup. (*Id.* ¶ 11.) R.B. again positively identified Plaintiff as the individual who robbed him on April 11. (*Id.* ¶ 12.) Based on R.B.'s positive identifications and statements, Plaintiff was arrested and arraigned on a charge of robbery in the third degree on May 10, 2016. (*Id.* ¶¶ 14–15.) During the same arraignment, Plaintiff was also arraigned on a separate criminal case charging him with, *inter alia*, attempted murder. (*Id.* ¶ 16.) At the time of his arraignment, Plaintiff was incarcerated at Rikers on a different, open homicide case. (*Id.* ¶ 17.) Although Plaintiff was granted bail on the robbery charge, he was remanded on the attempted murder charge. (*Id.* ¶¶ 18–19.) In February 2017, the robbery charges against Plaintiff were dropped, but Plaintiff remained in prison because of the several other criminal cases pending against him. (Def.'s Ex. B, Dkt. 45-2, at ECF 12–13.)

### III. Procedural History

Plaintiff commenced this action on February 27, 2017, asserting false imprisonment/false arrest and malicious prosecution claims against "the People for the State of New York," the "Queens County Precinct" of the NYPD, and a "John Doe" police officer of the NYPD's 103rd Precinct, based on the May 2016 robbery charge. (*See* Complaint, Dkt. 5-1, at ECF 1; May 12, 2017 Memorandum & Order, Dkt. 7, at 1.) On May 12, 2017, the Court *sua sponte* dismissed Plaintiff's claims as to the People of the State of New York and the NYPD, but allowed Plaintiff's claims against the "John Doe" officer to proceed. (May 12, 2017 Memorandum & Order, Dkt. 7, at 1.) On August 4, 2017, the Honorable Roanne L. Mann substituted Defendant Derek Webber for the "John Doe" officer. (Aug. 4, 2017 Docket Order.) Defendant Webber was served on

September 13, 2017 (Dkt. 18) and answered on October 4, 2017 (Dkt. 19); thereafter, the case proceeded to discovery. After discovery, Defendant sought leave to file a motion for summary judgment. (Defendants' pre-motion conference letter, Dkt. 36.) Leave was granted on November 8, 2018. (Nov. 8, 2018 Docket Order.) Defendant's motion was fully briefed on May 10, 2019. (*See* Dkts. 40, 42–47.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks and citation omitted) (alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*,

298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks and citation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Defendant Webber seeks summary judgment as to both Plaintiff's false arrest and malicious prosecution claims.

I.  **False Arrest**

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual

6

to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant*, 101 F.3d at 852). To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (brackets in original) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

A. **Defendants Had Probable Cause to Arrest Plaintiff**

Here, the only disputed issue with respect to Plaintiff's false arrest claim is whether there was probable cause for his arrest. (Defendant's Memorandum of Law ("Def.'s Br."), Dkt. 44, at 3–7.)

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (additional citations omitted) (brackets in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The existence of probable cause "must be determined by reference to the totality of the circumstances." *Id.* (internal citation omitted).

Defendant argues that he had probable cause to arrest Plaintiff based on the "information he received from a complaining victim, R.B., and R.B.'s subsequent identifications of Plaintiff."

7

(Def.'s Br., Dkt. 44, at 6.) In general, "a law enforcement official has probable cause to arrest if he received his information from . . . the putative victim or eyewitness." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "Such incriminating information includes identifying a suspect from a photo array or lineup." *Radin v. City of New York*, No. 14-CV-7347 (NG) (RLM), 2016 WL 3982463, at *3 (E.D.N.Y. July 22, 2016) (citing *Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012) (summary order)). In fact, "[a] victim's identification of an assailant is, by itself, sufficient probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Virgil*, 455 F. App'x at 38 (internal quotation marks and citation omitted); *Alvarado v. City of New York*, 453 F. App'x 56, 58 (2d Cir. 2011) (summary order) (determining that victim's identification of plaintiff from lineup and photo array established probable cause).

Here, R.B. identified Plaintiff as the perpetrator of the robbery first in a photo array, and then, a few days later, in a lineup. (Def.'s 56.1, Dkt. 43, ¶¶ 8–9, 11–12.) These victim-eyewitness identifications provided probable cause to arrest Plaintiff. *See Williams v. City of New York*, No. 10-CV-2676 (JG) (LB), 2012 WL 511533, at *5 (E.D.N.Y. Feb. 15, 2012) ("[A]n eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances.") (internal citations omitted). Moreover, Plaintiff's protestations to Defendant Webber that he was not the perpetrator (Def.'s Ex. B, Dkt. 45-2, at 68:4–5 (noting that Plaintiff told Defendant Webber that "Sir, you really need to look into this. This is not me.")), are not enough to vitiate this probable cause. *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205–06 (E.D.N.Y. 2014) ("The Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime.") (citing, *inter alia*,

*Panetta*, 460 F.3d at 395–96 ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.")).

Plaintiff argues that probable cause did not exist to support his arrest because R.B. "could not identify the [P]laintiff after a mug shot viewing" and that it was "only after[] the [P]laintiff's photo was all over the news and in multiple news[]papers [that R.B. was] able to identify the [P]laintiff as the person who robbed him." (Pl.'s Br., Dkt. 40, at ECF 1.) The reliability of a witness identifying a perpetrator may be called into question when the eyewitness is unable to consistently identify the alleged perpetrator. *See Grant v. City of New York*, No. 15-CV-3635 (ILG) (ST), 2019 WL 1099945, at *6 (E.D.N.Y. Mar. 8, 2019) (noting that the reliability of a victim's identification may be called into question when the victim failed to positively identify plaintiff's photograph half an hour prior to plaintiff being positively identified in a "point out" canvassing procedure). However, Plaintiff has not provided any evidence to support the assertion that Plaintiff's picture was among the mugshots that R.B. viewed. In support of his argument, Plaintiff includes Defendant Webber's summary of the mugshot photo viewing. (*See* Pl.'s Ex. D, Dkt. 40, at ECF 18.) In the "summary of investigation" section, Defendant Webber wrote that R.B. "conducted[ed] a Mugshot photo viewing of individuals matching the description of the perpetrator wanted in the complaint." (*Id.*) Plaintiff asserts that the reference to "the perpetrator" is a reference to him. (*See* Pl.'s Br., Dkt. 40, at ECF 1.) However, looking at the totality of Defendant Webber's investigation notes, it is clear that Defendant Webber used Plaintiff's name when actually referring to Plaintiff and used "the perpetrator" as a place holder before Defendant Webber identified Plaintiff as a suspect in the robbery. (*Compare* Def.'s Ex. D, Dkt. 45-4 (noting that on April 12, Defendant Webber uploaded pictures of "the perpetrator" from the taxi) *and* Def.'s Ex. F, Dkt. 45-6 (noting that on April 15, Defendant Webber requested a Crime Stoppers

reward for "the perpetrator pictured above"), *with* Def.'s Ex. G, Dkt. 45-7 (noting that on April 16, Defendant Webber showed R.B. "a Photo Array of the subject William Smith") *and* Def.'s Ex. H, Dkt. 45-8 (noting that on April 18, Defendant Webber conducted "a lineup of wanted perpetrator William Smith").) Furthermore, Plaintiff's assertion that his photo was included in the April 11 mugshot viewing is belied by the fact that on April 15, Defendant Webber requested a Crime Stoppers reward to try and determine the perpetrator's identity. (Def.'s Ex. F, Dkt. 45-6.) It strains credulity to believe that Defendant Webber exposed the NYPD to having to pay a $25,000 reward to identify someone that Defendant Webber had already identified. Lastly, while it is theoretically possible that Plaintiff's photo was randomly included in the mugshot photo array, Plaintiff has provided no evidence to support this theory.

Likewise, had R.B. seen Plaintiff's picture in the news or on Facebook[5] before seeing Plaintiff's picture in the photo array, the validity of his identification might be called into question. *See Perry v. New Hampshire*, 565 U.S. 228, 264 (2012) (noting that "[s]tudy after study demonstrates that eyewitness recollections are highly susceptible to distortion by postevent information or social cues") (Sotomayor, J., dissenting); *Simmons v. United States*, 390 U.S. 377, 383–84 (1968) (noting that a witness previously shown a photo of an innocent person "is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification"). However, once again, Plaintiff has failed to provide any evidence to support this assertion. There is simply no evidence

---

[5] Though Plaintiff does not argue that his picture was on Facebook, he does include a handwritten note on one of his exhibits stating that the picture used for the photo array was on Facebook, which the Court presumes forms the basis of Plaintiff's argument that R.B. could have seen Plaintiff's photo there before identifying Plaintiff in the photo array. (*See* Pl.'s Ex. E, Dkt. 40, at ECF 23.) However, for the reasons discussed *infra*, this unsupported and purely speculative conjecture does not create a material dispute of fact as to R.B.'s reliability as an eyewitness, his identification of Plaintiff, or the existence of probable cause.

to support the conclusion that R.B. saw Plaintiff's picture before the photo array on April 16. Plaintiff's assertions, unsupported by any evidence, are insufficient to create a material issue of fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, . . . nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation marks and citation omitted).

Finally, Plaintiff also argues that Defendant Webber made several false allegations relating to the April 11 robbery. (Pl.'s Br., Dkt. 40, at ECF 1–3.) For example, Plaintiff alleges that Defendant Webber told Plaintiff that he (Webber) had "view[ed] the plaintiff getting into this cab[], . . . and on the video at the hotel." (*Id.* at ECF 1.) Similarly, Plaintiff also alleges that Defendant Webber told Plaintiff that "[he] had seen [Plaintiff] in the cab with the wrap-around ring."[6] (*Id.* at ECF 2.) Finally, Plaintiff argues that the police reports prepared by Defendant Webber relating to the April 11 robbery included falsified information, relating to what Plaintiff was wearing on the day of the incident and the day of his arrest. (*See id.* at ECF 2–3 (noting that "[t]hese report(s) mentioned the [P]laintiff having black glasses, which was never viewed in any video nor any of the mug shots; Black sneakers and Black cowboy boots were also mentioned in the report(s) prepared by the [D]efendant. Again, these findings were falsified allegations in the report(s) about the [P]laintiff").) First, Plaintiff fails to explain how Defendant Webber's alleged untrustworthiness relates to R.B.'s identifications of Plaintiff as the perpetrator, which provided the probable cause to arrest Plaintiff. Moreover, even assuming *arguendo* that the Court could infer from Defendant Webber's general untrustworthiness that he could have falsified the

---

[6] Plaintiff does not provide any further evidence or explanation regarding what he refers to as "the wrap-around ring."

11

information supporting a finding of probable cause in some unspecified way, Plaintiff provides no evidence to support such an argument. In fact, some of his assertions are directly contradicted by the record. For example, Plaintiff's argument that the reports prepared by Defendant Webber were falsified appears to rely on the fact that they contain inconsistencies as between each other.[7] However, these reports are not inconsistent because they describe Plaintiff at different points in time. The April 12, 2016 police report describes the perpetrator as wearing sunglasses and black cowboy boots on April 11, 2016 (Def.'s Ex. E, Dkt. 45-5, at 3), while the May 10, 2016 arrest report describes Plaintiff, on that day, as wearing black sneakers and no headgear, such as glasses (Def.'s Ex. I, Dkt. 45-9, at 2). Furthermore, Defendant Webber did not prepare the April 12 police report; rather, the information was entered into the report by an "SPA Matthews." (Def.'s Ex. E., Dkt. 45-5, at 4.) Plaintiff also fails to provide any evidence to support his claims about Defendant Webber telling Plaintiff false information, *e.g.*, that Webber had seen Plaintiff getting into a cab or on the video at the hotel. (Pl.'s Br., Dkt. 40, at ECF 1.) These types of unsupported allegations are insufficient to defeat a motion for summary judgement. *See Carlisle v. City of New York*, No. 05-CV-6825 (SAS), 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) (granting summary judgment when "plaintiff allege[ed] that the detectives fabricated and planted evidence, [but] he fail[ed] to offer even a scintilla of support for these allegations"); *see also Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 422 (S.D.N.Y. 2002) (noting that "'mere conjecture [and] speculation,' . . . does not provide a basis to deny summary judgment") (first alteration in original) (quoting *Argus Inc. v.*

---

[7] To the extent Plaintiff alleges that these reports are inconsistent with the surveillance video and mug shots, those inconsistencies have no bearing on the probable cause determination, given that (1) the May 10 report described Defendant's appearance on a date different than the surveillance video, (2) there is no evidence that the April 12 and May 10 reports described Defendant's appearance on the same date as the mug shot photo, and (3) as discussed *supra*, Defendant Webber's credibility is only minimally relevant to the probable cause determination, which is based on the victim-eyewitness identifications.

*Eastman Kodak Co.*, 801 F.3d 38, 42 (2d Cir. 1986)); *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 522 (S.D.N.Y. 2009) ("Plaintiff submits no evidence to support his supposition; he merely speculates . . . . That is not sufficient to bar summary judgment [].").

The Court therefore finds that, based on the undisputed evidence, Defendant Webber had probable cause to arrest Plaintiff. Accordingly, Plaintiff's false arrest claim is dismissed.

### B. Defendants Are, at a Minimum, Entitled to Qualified Immunity as to the False Arrest Claim

Even assuming, *arguendo*, that Defendant did not have probable cause to arrest Plaintiff, the Court finds that Defendant, at the very least, had arguable probable cause and is therefore shielded from liability by qualified immunity.

> A defendant is entitled to qualified immunity under federal law if (1) the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for the defendant to believe that his actions were lawful at the time of the challenged act.

*Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (internal quotation marks, brackets, and citation omitted). "In the false arrest context, '[a]n arresting officer is entitled to qualified immunity . . . even when probable cause to arrest does not exist, if he can establish that there was arguable probable cause to arrest.'" *Thomas v. City of New York*, No. 11-CV-2219 (LAP) (GWG), 2013 WL 1325186, at *7 (S.D.N.Y. Apr. 2, 2013) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)). "Arguable probable cause" exists where state officials "of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks and citations omitted). Here, the Court finds that reasonable officers could disagree as to whether there was probable cause to arrest Plaintiff given that a victim-eyewitness to the robbery had unequivocally identified Plaintiff as the perpetrator in both a photo array and a lineup, and there was nothing that raised

concerns about the veracity of those identifications. *See Williams*, 2016 WL 3194369, at *6 (finding arguable probable cause when plaintiff was identified by an eyewitness and there was an "absence of circumstances that would raise doubt" about the veracity of the eyewitness's identification) (citing *Stansbury v. Wertman*, 721 F.3d 84, 90–91 (2d Cir. 2013)); *Nunez v. City of New York*, 735 F. App'x 756, 761 (2d Cir. 2018) (summary order) (affirming district court's finding of arguable probable cause when plaintiff failed to provide evidence to support allegations that eyewitness's identification was unreliable). Accordingly, even assuming that no probable cause existed, Plaintiff's false arrest claim still fails.

## II. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello*, 612 F.3d at 160–61 (internal citations omitted). To state a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (internal quotation marks and citations omitted). "A claim for malicious prosecution under section 1983 requires the additional element of '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Perez v. Duran*, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) (additional citation omitted) (quoting *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000)).

### A. Lack of Probable Cause

Here, Plaintiff's arrest and the initiation of his prosecution began on the same day, May 10, 2016. (*See* Def.'s 56.1, Dkt. 43, ¶¶ 14–15; *see also* Def.'s Ex. J., Dkt. 45-10 (Queens County

criminal complaint dated May 10, 2016).) "The existence of probable cause is a complete defense to a claim of malicious prosecution . . . ." *Manganiello*, 612 F.3d at 161–62 (quoting *Savino*, 331 F.3d at 72). Therefore, given that probable cause existed to support Plaintiff's arrest, it also existed to support the initiation of Plaintiff's prosecution. *See Williams*, 2016 WL 3194369, at *6 ("The Court's determination that there was arguable probable cause to defeat [Plaintiff's] false arrest claim also precludes his malicious prosecution claim, as Defendants are equally entitled to qualified immunity [on that claim].") (citing *Virgil*, 455 F. App'x at 39–40; *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011)). Plaintiff provides a transfer memo[8] that indicates that the NYPD and/or prosecutor's office knew as of December 6, 2016 that Plaintiff was not the perpetrator of the April 11, 2016 robbery. (Pl.'s Ex. G, Dkt. 40, at ECF 28.) However, this fact, in the absence of evidence showing that this information was available to, or known by, Defendant Webber and/or the prosecutor's office before Plaintiff's arraignment in May 2016, is insufficient to vitiate the existence of probable cause to initiate prosecution against him. *See Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) ("[T]he existence, or lack, of probable cause is

---

[8] The memo was written by Neil P. Fenton for James Evangelou and Jennifer Naiburg (Pl.'s Ex. G, Dkt. 40, at ECF 28), but there is no further evidence explaining who these individuals are or what role they played in Plaintiff's prosecution. The memo states that

> Defendant was arrested for the April 11, 2016 robbery of cab driver [R.B.] The proof consists of a photo array hit. However, it appears from a review of the photographic evidence that it was not him.
>
> Based upon a review of the known photos of defendant [Smith] compared to the still photos from defendant, it appears that it is not defendant. Based upon conversation with the assigned 2013 officer, Police Officer Derek Webber, it appears that the real robber is [redacted].

(*Id.*)

measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the arrest.") (internal quotation marks, alterations, and citation omitted).

The Court notes that though R.B. identified Plaintiff as the perpetrator in April 2016, Plaintiff was not arrested or arraigned until May 10, 2016. (*Compare* Def.'s 56.1, Dkt. 43, ¶¶ 8–9, 11–12, *with* Def.'s Ex. I, Dkt. 45-9, at 1.) However, Plaintiff does not provide any evidence to suggest that during the intervening month, the probable cause that existed in April 2016 had dissipated. *Cf. Nunez*, 735 F. App'x at 761 ("In order for probable cause to dissipate [between arrest and prosecution], the groundless nature of the charges must be made apparent by the discovery of some intervening fact.") (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'") (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

Accordingly, Plaintiff's malicious prosecution claim must be dismissed because he cannot establish the lack of probable cause to initiate his prosecution.

### B. Post-Arraignment Liberty Deprivation

"To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment . . . ." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order) (citing, *inter alia*, *Manganiello*, 612 F.3d at 161–62). "Courts have held, for purposes of a malicious prosecution claim, that an inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses." *Allen v. City of New York*, 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). Plaintiff was already incarcerated when he was arrested and arraigned on May 10, 2016 for the April 11, 2016

robbery. (Def.'s 56.1, Dkt. 43, ¶ 17; *see also* Def.'s Ex. B, Dkt. 45-2, at 89:12–14 (noting that Plaintiff was incarcerated for all of the court appearances relating to the robbery charge); Def.'s Ex. B, Dkt. 45-2, at 91:16–24 (noting that Plaintiff was not released from prison even after his robbery charge was dismissed because he still had murder and attempted murder charges against him).) Furthermore, Plaintiff has not provided any evidence suggesting that his incarceration would have been different if not for the attempted robbery charge. *Cf. Allen*, 480 F. Supp. 2d at 718 (denying summary judgment on malicious prosecution claim where plaintiff argued that he suffered a deprivation of liberty because his overall prison term was lengthened as a result of the charges underlying the malicious prosecution claim).

Therefore, Plaintiff's malicious prosecution claim must also be dismissed because he is not able to show that he suffered the necessary deprivation of liberty. *See Arnold v. Geary*, No. 09-CV-7299 (GWG), 2013 WL 4269388, at *5 (S.D.N.Y. Aug. 16, 2013) ("In sum, because [plaintiff] was incarcerated on [other] charges at all times that the misdemeanor charges [that were the basis of plaintiff's malicious prosecution claims] were pending, he cannot show that he was deprived of liberty in connection with the misdemeanor charges"), *aff'd*, 582 F. App'x 42 (2d Cir. 2014).

\* \* \*

Accordingly, Plaintiff's claim for malicious prosecution is dismissed.[9]

---

[9] In his summary judgment briefing, Plaintiff states that he still has not received information about Defendant Webber's disciplinary history that he requested as part of discovery and asks that this information be provided. (Pl.'s Br., Dkt. 40, at ECF 37–38.) The Court denies this request as moot, given that there is nothing in Defendant Webber's disciplinary history that could defeat the finding of probable cause to arrest or initiate prosecution of Plaintiff, which, in itself, requires the granting of Defendant's summary judgment motion and the dismissal of Plaintiff's false arrest and malicious prosecution claims.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 24, 2020
       Brooklyn, New York